IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NIMESH R. THAKKAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-09-0841 |
| GIMHANA K. BALASURIYA, | § | |
| THERES M. LOWE, and BALASURIYA | § | |
| BROTHERS, INC. d/b/a GM VIDEO | § | |
| d/b/a ABC VIDEO, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Nimesh R. Thakkar, brings this action against defendants, Gimhana K. Balasuriya, Theres M. Lowe, and Balasuriya Brothers, Inc. d/b/a GM Video d/b/a ABC Video, to collect unpaid overtime wages pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). Pending before the court is Defendants' Motion for Summary Judgment on the Basis of Res Judicata (Docket Entry No. 7). For the reasons explained below, the defendants' motion for summary judgment will be denied.

## I.  Undisputed Facts

Thakkar is a former employee of GM Video, which is owned by defendants Balasuriya and Lowe. On December 13, 2007, Thakkar filed a wage claim with the Texas Workforce Commission (TWC)

seeking unpaid wages and overtime.[1]   On July 9, 2008, the TWC
entered a Preliminary Wage Determination Order dismissing Thakkar's
claim.[2]   Thakkar appealed the dismissal of his claim, and on
August 14, 2008, an evidentiary hearing conducted by telephone was
initiated and continued on September 18, 2008.  On September 22,
2008, a hearing officer for the TWC Wage Claim Appeal Tribunal
issued a Texas Payday Law Decision finding that

> the claimant has been paid for all hours worked by him,
> and that he did not work any overtime.  This hearing
> officer further finds that the claimant worked 502.5
> hours at $8.75 per hour, and earned $4,396.87 in wages.
> The claimant has been paid $4,396.00 in wages and is
> entitled to an additional $0.87 in wages from this
> employer.  The order issued July 9, 2008, will be
> rescinded.  The employer, Gimhana Balasuriya and Theres
> Lowe, d.b.a. GM Video will be ordered to pay $0.87 in
> wages to the Texas Workforce Commission for the benefit
> of the claimant, Nimesh R. Thakkar.[3]

The hearing officer explained the basis for his decision:

> Testimony from both parties and documentary evidence
> established the following facts: The claimant worked at
> GM Video.   This is a partnership owned by Gimhana
> Balasuriya and Theres Lowe.  The claimant was employed by
> this employer from August 24, 2007, to November 25, 2007,
> as a cashier being paid $8.75 per hour. . . .  The
> claimant was working three days per week for the employer
> (Friday, Saturday, and Sunday).   The claimant was

---

[1]See Exhibit 1 attached to Declaration of Theres M. Lowe (Lowe
Declaration) attached to Defendants' Motion for Summary Judgment on
the Basis of Res Judicata (Defendants' Motion for Summary
Judgment), Docket Entry No. 7.

[2]See Exhibit 2 attached to Lowe Declaration, attached to
Defendants' Motion for Summary Judgment, Docket Entry No. 7.

[3]See Exhibit 3 attached to Lowe Declaration, attached to
Defendants' Motion for Summary Judgment, Docket Entry No. 7, p. 3.

scheduled to work from 8:00 p.m. to 8:00 a.m. each of these days.

The employer kept track of the hours that the claimant worked by writing them in a book each day.

The claimant submitted a record of the hours that he worked each day.  These documents were created by the claimant after talking with a Labor Law investigator. The claimant asserted that they might not be correct.

. . .

By a preponderance of the evidence, and because the employer kept a record of the hours worked by the claimant each day, and the claimant's records were created after talking with a Labor Law investigator, this hearing officer finds the employer's records more credible.[4]

On November 20, 2008, the TWC denied Thakkar's appeal from the Wage Claim Appeal Tribunal decision.[5]

On January 20, 2009, the Commission denied Thakkar's motion for rehearing explaining that

The Texas Administrative Code at 40 T.A.C. 815.17 provides that a motion for rehearing shall not be granted unless each of the following three criteria is met:

(A)   there is an offering of new evidence, which was not presented at the Wage Claim Appeal Tribunal level,

(B)   there is a compelling reason why the new evidence was not presented earlier, and

(C)   there is a specific explanation of how considera- tion of the evidence would change the outcome of the case.

---

[4]Id. at 2.

[5]See Exhibit 4 attached to Lowe Declaration, attached to Defendants' Motion for Summary Judgment, Docket Entry No. 7.

-3-

The Commission has considered the motion for rehearing
and is of the opinion that it does not meet the criteria
of Rule 17 and the Commission's decision of November 20,
2008 was proper.  Accordingly, a rehearing is denied.[6]

Following Thakkar's failure to seek judicial review in state
court, Balasuriya and Lowe paid $0.87 as ordered by the TWC.[7]

## II.  Procedural Background

On March 22, 2009, Thakkar filed the instant collective action
under the FLSA, 29 U.S.C. § 216(b), naming as defendants
Balasuriya, Lowe, and Balasuriya Brothers, Inc. d/b/a GM Video
d/b/a ABC Video (Docket Entry No. 1).  On June 23, 2009, defendants
filed the pending motion for summary judgment on the basis of res
judicata (Docket Entry No. 7).  On July 10, 2009, plaintiffs filed
their response and opposition to defendants' motion for summary
judgment (Docket Entry No. 8); and on July 24, 2009, defendants
filed a reply in support of their motion for summary judgment
(Docket Entry No. 14), in which they argue, inter alia, that
"[w]hile res judicata is dispositive, the same summary judgment
evidence also establishes collateral estoppel."[8]

---

[6]See Exhibit 5 attached to Lowe Declaration, attached to
Defendants' Motion for Summary Judgment, Docket Entry No. 7.

[7]See Exhibit 6 attached to Lowe Declaration, attached to
Defendants' Motion for Summary Judgment, Docket Entry No. 7.

[8]Defendants' Reply in Support of Motion for Summary Judgment
on the Basis of Res Judicata (Defendants' Reply), Docket Entry
No. 14, p. 3.

-4-

### III.  <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) (quoting <u>Celotex</u>, 106 S.Ct. at 2553-2554).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> (citing <u>Celotex</u>, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in

-5-

favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

Res judicata and collateral estoppel are affirmative defenses for which defendants bear the burden of proof at trial. <u>See</u> <u>Rivet v. Regions Bank</u>, 118 S.Ct. 921, 925 (1998). Accordingly, defendants must establish "beyond peradventure *all* of the essential elements of the[ir] . . . defense[s] to warrant judgment in [their] favor." <u>Fontenot v. Upjohn Co.</u>, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). <u>See also</u> <u>Crescent Towing & Salvage Co., Inc. v. M/V Anax</u>, 40 F.3d 741, 744 (5th Cir. 1994) (citing <u>Celotex</u>, 106 S.Ct. at 2552-53 (party who has burden of proof on affirmative defense at trial has burden of proof on summary judgment)). The preclusive effect to be accorded a prior proceeding is a question of law. <u>See</u> <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 313 (5th Cir. 2004).

## IV. <u>Analysis</u>

Citing the Full Faith and Credit Statute, 28 U.S.C. § 1738, and the Texas Supreme Court's opinion in <u>Igal v. Brightstar Information Technology Group</u>, 250 S.W.3d 78 (Tex. 2008), defendants contend that they are entitled to summary judgment because under

-6-

Texas law "a TWC determination in a Texas Payday Law proceeding is entitled to a res judicata effect."[9]  Asserting that "the TWC made a determination of unpaid wages, not overtime and liquidated damages," Thakkar responds that "Igal is not controlling on the issue of whether an FLSA case in federal court is barred because of a prior TWC ruling on unpaid wages."[10]  The court agrees.

**A.   Applicable Law**

   1.   Full Faith and Credit Statute Not Applicable

The Full Faith and Credit Statute, 28 U.S.C. § 1738, on which defendants rely provides that the judgments of state courts "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  This statute extends to the federal courts the requirements of the Full Faith and Credit Clause of the United States Constitution, Article IV, § 1, which applies of its own force only to state courts.  See Kremer v. Chemical Construction Corp., 102 S.Ct. 1883, 1898 & n.24 (1982). See also Connecticut Bank of Commerce v. Republic of Congo, 309 F.3d 240, 248 (5th Cir. 2002).  However, when the Supreme Court was asked to decide whether a federal court must accord full faith and

---

   [9]Defendants' Motion for Summary Judgment, Docket Entry No. 7, p. 3.

   [10]Plaintiff's Response and Opposition to Defendants' Motion for Summary Judgment on the Basis of Res Judicata (Plaintiffs' Response), Docket Entry No. 8, p. 4.

credit to an unreviewed state agency proceeding, such as at issue
in the instant case, the Court concluded that "§ 1738 governs the
preclusive effect to be given the judgments and records of state
courts, and is not applicable to the unreviewed state
administrative factfinding at issue in this case." University of
Tennessee v. Elliott, 106 S.Ct. 3220, 3224 (1986). Nevertheless,
observing that common law rules of preclusion have frequently been
fashioned in the absence of a governing statute, and that § 1738
antedates the development of administrative agencies, the Supreme
Court reasoned that unreviewed agency decisions could be accorded
preclusive effect under the common law. Id.

    2.   Elliot Analysis

In Elliott the University of Tennessee notified a black
employee that he would be discharged for inadequate work
performance and misconduct. 106 S.Ct. at 3222. The employee
requested an administrative hearing, but before a hearing could be
held he filed suit in federal court. Alleging that his proposed
discharge was racially motivated, the employee sought relief under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and
other civil rights statutes, i.e., 42 U.S.C. §§ 1981, 1983, 1985,
1986, and 1988, as well as the First, Thirteenth, and Fourteenth
Amendments to the United States Constitution. The federal court
allowed the administrative proceedings to proceed.

The Administrative Law Judge (ALJ) who conducted the
administrative proceedings held that he lacked jurisdiction to

-8-

adjudicate the employee's federal civil rights claims, but allowed the employee to present, as an affirmative defense, evidence that the charges against him were motivated by racial prejudice and, therefore, were not a proper basis for his proposed discharge. After hearing evidence the ALJ found that the university had proved some but not all of the charges against the respondent and that the charges were not racially motivated. Nevertheless, the ALJ concluded that the proposed discharge was too severe a penalty, and ordered the employee transferred to a new assignment under different supervisors. The employee appealed to the university's vice-president, who affirmed the ALJ's finding that the proposed discharge was not racially motivated.

Instead of seeking review of the administrative proceedings in state court, the employee returned to federal court where the university moved for summary judgment on the ground that the employee's action was an improper collateral attack on the ALJ's ruling, which was entitled to preclusive effect. The district court agreed, holding that the civil rights statutes on which the employee relied were not intended to afford a means of relitigating that which had already been litigated in the administrative proceeding. The Sixth Circuit reversed. The Supreme Court granted certiorari to consider the university's contention that the Sixth Circuit erred in holding that state administrative fact-finding is never entitled to preclusive effect for claims asserted under Title VII or other civil rights statutes. Id. at 3222-24.

-9-

Reasoning from the language and legislative history of the statutes at issue, the Supreme Court held that a presumption in favor of the common law doctrines of preclusion did not apply to the plaintiff's Title VII claims, but did apply to all of the plaintiff's other claims.  Crucial to the Court's conclusion was the fact that Title VII authorizes review of state agency decisions by the Equal Employment Opportunity Commission (EEOC).  Id. at 3224 (citing Kremer, 102 S.Ct. at 1891 n.7, and Chandler v. Roudebush, 96 S.Ct. 1949 (1976)).  Explaining that "[t]he question actually before us is whether a common-law rule of preclusion would be consistent with Congress' intent in enacting Title VII," id. at 3225, the Court concluded that "the Sixth Circuit correctly held that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."  Id. However, citing Allen v. McCurry, 101 S.Ct. 411 (1980), and Migra v. Warren City School District Board of Education, 104 S.Ct. at 892 (1984), the Court observed that nothing in either the language or legislative history of § 1983 suggests that Congress intended to repeal or restrict the traditional doctrines of preclusion.  Id. Citing United States v. Utah Construction & Mining Co., 86 S.Ct. 1545 (1966), the Court observed that

> [w]e have previously recognized that it is sound policy
> to apply principles of issue preclusion to the
> factfinding of administrative bodies acting in a judicial
> capacity.  In a unanimous decision in United States v.
> Utah Construction & Mining Co., . . . we held that the
> factfinding of the Advisory Board of Contract Appeals was
> binding in a subsequent action in the Court of claims
> involving a contract dispute between the same parties.

. . .

> Thus, <u>Utah Construction</u>, which we subsequently approved
> in <u>Kremer</u>, . . . 102 S.Ct. at 1899, n.26, teaches that
> giving preclusive effect to administrative factfinding
> serves the value underlying general principles of
> collateral estoppel: enforcing repose. This value,
> which encompasses both the parties' interest in avoiding
> the cost and vexation of repetitive litigation and the
> public's interest in conserving judicial resources, <u>Allen
> v. McCurry</u>, . . . 101 S.Ct. at 414, is equally implicated
> whether factfinding is done by a federal or state agency.

<u>Id.</u> at 3225-26. Then, observing that "[h]aving federal courts give

preclusive effect to the factfinding of state administrative

tribunals also serves the value of federalism," <u>id.</u> at 3226, the

Court held

> that when a state agency "acting in a judicial capacity
> . . . resolves disputed issues of fact properly before it
> which the parties have had an adequate opportunity to
> litigate," <u>Utah Construction & Mining Co.</u>, . . . federal
> courts must give the agency's factfinding the same
> preclusive effect to which it would be entitled in the
> State's courts.

<u>Id.</u> However, the Court cautioned that "Congress of course may

decide, as it did in enacting Title VII, that other values outweigh

the policy of according finality to state administrative

factfinding." <u>Id.</u> at n.7.

In <u>Astoria Federal Savings and Loan v. Solimino</u>, 111 S.Ct.

2166 (1991), the Court extended the <u>Elliott</u> Court's reasoning to

claims brought under the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. § 621, <u>et seq.</u> There, Angelo Solimino had worked

for the petitioner, Astoria Federal Savings and Loan Association,

for almost 40 years when at age 63 he was dismissed from his

position as a vice-president in the mortgage department. Solimino

-11-

filed a charge of age discrimination with the EEOC.   Under a worksharing agreement with the state agency, <u>see</u> 29 C.F.R. § 1626.10 (1990), the EEOC referred the matter to the New York State Division of Human Rights, which was responsible for preliminary investigation and disposition of age-discrimination claims under New York's Human Rights Law.   After conducting a hearing at which both parties were represented by counsel, the state agency found no probable cause to believe that the petitioner had terminated Solimino because of his age.   Following affirmance by the State Human Rights Appeal Board, Solimino did not seek review of the Board's decision in state court but, instead, filed an ADEA claim in federal court alleging the same facts as those considered in the state administrative proceedings.   The district court granted the petitioner's motion for summary judgment holding that the common-law presumption of administrative estoppel prevailed by virtue of Congress' failure in either the language or legislative history of the ADEA to address the issue of preclusion. <u>Id.</u> at 2168-69 (citing <u>Solimino v. Astoria Federal Savings and Loan Association</u>, 715 F.Supp. 42, 47 (E.D.N.Y. 1989)).   The district court explained that the state agency's determination that the petitioner had not engaged in age discrimination was a finding of fact that precluded federal litigation.[11]   The Second Circuit

---

[11]As in the instant case, the state agencies reviewed Solimino's complaint only on state law grounds.   <u>Astoria</u>, 111 S.Ct. at 2168-69.

reversed, inferring from the ADEA's structure, a legislative intent
to deny preclusive effect to such state administrative proceedings.
Solimino v. Astoria Federal Savings and Loan Association, 901 F.2d
1148 (2d Cir. 1990).   The Supreme Court granted certiorari to
resolve a circuit conflict.   See Astoria, 111 S.Ct. at 2169.

Recognizing that although "administrative estoppel is favored
as a matter of general policy, its suitability may vary according
to the specific context of the rights at stake, the power of the
agency, and the relative adequacy of agency procedures," id. at
2170, the Court reviewed the reasoning upon which it had based its
holding in Elliott that common law doctrines of preclusion do not
apply to Title VII claims.   Id. at 2170-71.   The Court then held
that

> [w]e reach the same result here, for the Age Act, too,
> carries an implication that the federal courts should
> recognize no preclusion by state administrative findings
> with respect to age-discrimination claims.   While the
> [ADEA] contains no express delimitation of the respect
> owed to state agency findings, its filing requirements
> make clear that collateral estoppel is not to
> apply. . . . [These] provisions plainly assume the
> possibility of federal consideration after state agencies
> have finished theirs.

Astoria, 111 S.Ct. at 2171.

3.   Conclusions

Because § 1738 governs the preclusive effect to be given the
judgments and records of state courts, and is not applicable to
unreviewed fact-findings of state agencies, the court concludes

-13-

that the analysis applied by the Supreme Court in <u>Elliott</u> and <u>Astoria</u> controls the issue now before the court concerning the preclusive effect the TWC's decision has on Thakkar's FLSA claim.

**B.   Application of the Law to the Facts**

Pursuant to <u>Elliot</u> and <u>Astoria</u>, federal courts must give an agency's fact-finding the same preclusive effect that they would a decision of a state court when the state agency is acting in a judicial capacity and gives the parties an adequate opportunity to litigate.   <u>Elliot</u>, 106 S.Ct. at 3226.   However, if Congress manifests an intent, pursuant to a statutory scheme, that state administrative decisions have no such preclusive effect, collateral estoppel is not to be applied.   Such intent need not be explicit, and can be implied if, for example, Congress created its own administrative scheme to deal with the matter in question.   <u>See</u> <u>Astoria</u>, 111 S.Ct. at 2171.   <u>See also</u> <u>Stafford v. True Temper</u> <u>Sports</u>, 123 F.3d 291 (5th Cir. 1997) (applying <u>Elliott</u> analysis to claims brought under the Employee Retirement Income Security Act).

Defendants have not cited any case in which a court has held that an unreviewed state administrative proceeding such as the TWC proceeding at issue in the instant case precludes an FLSA claim later filed in federal court, and neither the Supreme Court nor the Fifth Circuit appears to have ruled on this issue.   However, the Second Circuit has suggested that the FLSA shares the distinguishing features of Title VII that the Supreme Court found

-14-

persuasive in not applying common law doctrines of preclusion in
Elliott.   See Solimino, 901 F.2d at 1148.   There, the Second
Circuit held that unreviewed state agency findings have no
preclusive effect in suits brought under the ADEA and, in dicta,
suggested that no preclusive effect would be given to suits brought
under the FLSA.   Responding to the appellant's argument that
provisions of the ADEA derived from the FLSA, and not from
Title VII (and that the case was, therefore, distinguishable from
Elliott), the Second Circuit noted:

> In any event, assuming *arguendo* that we should look to
> the FLSA instead of Title VII for guidance as to the
> preclusion issue in this ADEA suit, [appellant] fails to
> cite any part of the FLSA or its interpretive caselaw
> that indicates Congress intended in the FLSA to give
> preclusive effect to the judicially unreviewed
> fact-finding of a state administrative agency.

Solimino, 901 F.2d at 1152 (internal citations omitted).

The legislative history of the FLSA reveals that Congress'
intent was to ensure aggrieved employees broad access to the
courts:

> [the FLSA] was designed to give specific minimum
> protections to individual workers and to ensure that each
> employee covered by the act would receive "a fair day's
> pay for a fair day's work," and would be protected from
> "the evil of overwork as well as underpay."

Barrentine v. Arkansas-Best Freight System, Inc., 101 S.Ct. 1437,
1444 (1981).   To ensure such access the FLSA permits employees to
sue in either state or federal court for back wages and liquidated
damages, and to receive attorney's fees and costs.   29 U.S.C.
§ 216(b).   Moreover, subject to very limited exceptions, the Fifth

-15-

Circuit has construed employees' rights under the FLSA as non-waivable.  See Sneed v. Sneed's Shipbuilding, Inc., 545 F.2d 537 (5th Cir. 1977).

The statutory basis on which defendants have sought summary judgment, i.e., the Full Faith and Credit Statute, 28 U.S.C. § 1738, is not applicable to the unreviewed TWC decision on which the defendants rely.  Moreover, although defendants bear the burden of proving that they are entitled to summary judgment on the basis of the affirmative defense of preclusion, defendants have not demonstrated that the TWC decision on which they rely is entitled to preclusive effect pursuant to the analysis applied by the Supreme Court in Elliott and Astoria.  Accordingly, the court is not persuaded that the TWC decision on which defendants rely is entitled to preclusive effect or that the defendants are entitled to summary judgment on the basis of res judicata or collateral estoppel.

## V.  Order

For the reasons explained above, Defendants' Motion for Summary Judgment on the Basis of Res Judicata (Docket Entry No. 7) is **DENIED.**

**SIGNED** at Houston, Texas, on this the 6th day of August, 2009.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-16-